**[Cite as *In re J.P.*, 2023-Ohio-1264.]**

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:


J.P.


Abused and Dependent Child

JUDGES:
Hon. W. Scott Gwin P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case No. 2022 AP 11 0050

O P I N I O N


CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas,
                             Juvenile Division, Case No.  22 JN 00083


JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 18, 2023

APPEARANCES:

For Appellant                For Appellee Tuscarawas JFS

LISA CALDWELL                LISA VITALE ARNOLD
203 Fair Ave. NE             389 16th Street SW
New Philadelphia, Ohio  44663   New Philadelphia, Ohio  44663

For Appellee Joseph Neff     Guardian ad Litem

DONOVAN R. HILL              MARY WARLOP
112 Market Avenue North      116 Cleveland Avenue NW, Suite 500
Canton, Ohio 44702           Canton, Ohio 44702

For Child

TARA WRIGHT TIMBERLAKE
122 S. Wooster Ave.
Strasburg, Ohio 44680

*Wise, John, J.*

**{¶1}** Appellant Y.P. appeals the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which found her child J.P. to be a dependent and neglected child and granted Tuscarawas County Job & Family Services ("the Agency") permanent custody of J.P. The following facts give rise to this appeal.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** J.P. was born on March 3, 2022 to Appellant and J.N. ("Father").

**{¶3}** The Agency became involved with this family during Appellant's previous pregnancy when concerns of Appellant's drug abuse were raised. Both Appellant and Father attempted to work a case plan, but ultimately failed and the Agency was granted permanent custody of J.P.'s older sibling.

**{¶4}** On March 15, 2022, the Agency again became involved with the family when upon birth, J.P. tested positive for cocaine.

**{¶5}** On April 13, 2022, an adjudication hearing was held. Appellant stipulated to the complaint as amended, and the Court accepted her stipulation finding J.P. to be abused and dependent.

**{¶6}** On May 11, 2022, a disposition hearing was held. The agency presented a case plan to Appellant and Father which was agreed to and made an order of the Court. Appellant was in drug treatment at the time and was not added as a participant on the case plan.

**{¶7}** After successfully completing treatment, Appellant worked the case plan.

**{¶8}** On August 10, 2022, the Agency filed a Motion to Modify Prior Disposition to Permanent Custody.

**{¶9}** On September 27, 2022, Appellant filed a Motion to Extend the Temporary Custody of the Agency.

**{¶10}** On November 1, 2022, the trial court held a hearing on both the Motion to Extend Temporary Custody of the Agency and the Motion to Modify Prior Disposition to Permanent Custody.

**{¶11}** At the hearing the Agency called Skyler Smolak as its first witness. Mr. Smolak testified the Agency became involved with this case when J.P. tested positive for cocaine at birth. Appellant's first residence was at River Haven to be treated for drug abuse.  She then spent one night with a Robert Morton, who kicked her out for still talking with Father. She then provided the Agency with a New Philadelphia address at which they could never make contact. Finally, she provided the address where she is living now.

**{¶12}** During the plan Appellant tested positive for cocaine on April 13, 2022 and July 18, 2022. On April 13, 2022, Appellant still resided at River Haven and was adamant she would not test positive for cocaine. On July 18, 2022, Appellant also took a drug screen for Cobra Court, and she tested negative for cocaine on that urine test. On March 14, 2022, March 29, 2022, April 19, 2022, May 10, 2022, June 29, 2022, July 20, 2022, July 27, 2022, August 3, 2022, August 31, 2022, and September 9, 2022, she tested negative for all substances. Mr. Smolak puts little credibility in the urine tests at River Haven and for Cobra Court, as you are able to flush the substances from your system. However, the Agency's saliva test goes to the metabolite level which cannot be faked.

**{¶13}** Father has a criminal history with two current pending cases; two fifth-degree felonies for breaking and entering and theft on June 3, 2022, and a fifth-degree grand theft of a motor vehicle on September 7, 2022. Father was incarcerated three times

during the pendency of the case plan. Father was tested for drugs on April 13, 2022, April 29, 2022, May 11, 2022, and July 18, 2022. Father tested negative for all substances.

{¶14} On July 18, 2022, while in court reviewing this matter, Mr. Smolak asked Appellant if she had spoken with Father during his time in jail or while out of jail. Appellant answered in the negative. Mr. Smolak determined that to be a lie, as he had twenty-three jail house recordings of phone calls between Appellant and Father.

{¶15} J.P. is currently thriving in foster care. He is up to date on all vaccinations and medical appointments. He is doing well physically and should walk and talk soon. He has bonded with his foster parents and his half-sibling.

{¶16} Appellant is currently participating in supervised visits with J.P. at the Agency for an hour, once a week. They go well. She brings everything required for the visits. Father has never visited J.P.

{¶17} The Agency's concerns with reunifying Appellant and J.P. are Appellant's positive drug screens which she does not take responsibility for, the permanent custody of her previous child, which closely resembles this case, and her relationship with Father. She had an opportunity to be honest and up front about the relationship, and instead chose to lie about it. The relationship is a concern because due to the child's vulnerability as an infant, J.P. would need a safe environment. Appellant and Father's relationship raises concerns that the home would not be a safe place for J.P.

{¶18} The Agency's concerns with reunifying Appellant and Father are Father's extensive criminal history. He has been in and out of incarceration several times, and he has never shown stable housing.

**{¶19}** The Agency looked into J.P.'s grandfather as a potential placement, but he was rejected due to his criminal history. Father gave his father as a potential placement option, but he stated he was unable to take care of J.P. due to poor health. Robert Morton was brought up by Appellant as a possible placement option, but he told the agency he was unable to take care of J.P.

**{¶20}** On cross-examination, Mr. Smolak agreed that it was reasonable for Appellant to take time to save up for housing after leaving River Haven. She voluntarily participated in the case plan by attending counseling services through Ohio Guidestone, completed a psychological evaluation, completed the Agency's parenting education course successfully, and has had good visits with J.P.

**{¶21}** Next, Jerome Reed testified he is currently employed as a certifying scientist at Forensic Fluids Laboratories in Kalamazoo, Michigan. He stated there is a zero percent chance that a confirmed screen could be a false positive. The difference between a urine test and the saliva test the Agency does is the window of detection. The oral test would test positive from fifteen minutes to about three days, where it takes hours to show up in the urine test.

**{¶22}** Mary Warlop then testified she is the Guardian ad Litem for J.P. Ms. Warlop indicated she has concerns about J.P. being placed with Appellant. Appellant has a criminal history, has lost permanent custody of one child, J.P. was born testing positive for cocaine, her relationship with Father, and Appellant appears to still be struggling with sobriety.

**{¶23}** Currently, J.P. lives in a clean and comfortable home. All of his needs are being met. He is a happy child. He has bonded with the foster family and half sibling. He

reaches to them when he needs things. J.P. is developing well, seems bright, and maintains good eye contact. He is healthy and well fed. It is Ms. Warlop's opinion that the court grant permanent custody to the Agency.

**{¶24}** On cross-examination, Ms. Warlop noted Appellant's change in behavior from her pervious case to now. She did not participate in the previous case plan and went missing for a period of time during that case plan. She has remained involved, continuously visited with J.P., and even completed non-required services.

**{¶25}** The Agency then rested.

**{¶26}** Appellant called her first witness, Danelle German. Ms. German testified she works at Ohio Guidestone as a therapist and supervisor. She is a licensed social worker and dependency counselor. Appellant was very active in therapy and making appropriate progress. Appellant was adamant she did not use cocaine. After her positive tests she stopped brushing her teeth before meeting with the Agency because she feared cocaine had gotten in her toothpaste.

**{¶27}** Next, Appellant called Julie Laughlin as a witness. Ms. Laughlin testified she has been an officer with the Cobra Court since 1998. She was assigned as Appellant's probation officer. Appellant was tested fifty-nine times by Ms. Laughlin and received negative results every time.

**{¶28}** Finally, Appellant testified she has been living at the same address for six months, that she has been sober for ten months, and that she has been cutting off contact with Father. Her visits with J.P. have been going well, and she wants an extension to show she can provide a stable, safe, and sober home for J.P.

**{¶29}** On November 4, 2022, Appellant granted the Agency's Motion and awarded permanent custody of J.P. to the Agency.

**ASSIGNMENT OF ERROR**

**{¶30}** Thereafter, Appellant timely filed her notice of appeal and raises the following Assignment of Error:

**{¶31}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT THE AWARD OF PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST."

**I.**

**{¶32}** In Appellant's sole Assignment of Error, the trial court erred when finding J.P. could not be placed with Appellant in a reasonable amount of time, and that awarding permanent custody to the Agency was not in J.P.'s best interest. We disagree.

**{¶33}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark App. No. 5758, 1982 WL 2911, *1. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶34}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶35} Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶36} In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶37}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶38}** Here, R.C. §2151.414(B)(1)(a) applies as the trial court found that J.P. is not abandoned or orphaned and cannot be placed with either of J.P.'s parents within a reasonable time.

**{¶39}** Under R.C. §2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. §2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶40}** The trial court found that Appellant has previously lost custody of her older child, she has a criminal history and a history of drug abuse, has tested positive for cocaine during the pendency of J.P.'s case plan, and has maintained a relationship with Father despite his criminal history, incarceration, and pending criminal charges. The Agency has concerns over the safety of the home should Appellant and Father maintain a relationship. Appellant lied about maintaining contact with Father after Father went to jail.

**{¶41}** Father is currently incarcerated and at the time of the hearing had outstanding criminal charges. He has previously lost custody of two siblings of J.P. Father has not maintained contact with the caseworker.

**{¶42}** The trial court found it is in the best interest for the Agency to be awarded permanent custody of J.P., as it is in his best interest. He has bonded with his foster family and is thriving. His older half-sibling is also with the foster family, and J.P. has bonded with his half-sibling as well. He is healthy, well fed, and makes all his medical appointments.

**{¶43}** Upon review, we find the evidence at the permanent custody hearing shows Appellant failed two drug tests administered by the Agency, maintained contact with Father and lied to the Agency about that contact, that J.P. has bonded with his foster family and half-sibling, and is currently thriving.

**{¶44}** Based upon the foregoing, we find there is clear and convincing evidence to support the trial court's finding that it was in the best interest of the children to grant permanent custody to the Agency.

**{¶45}** The judgment of the Court of Common Pleas, Juvenile Division of Tuscarawas County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

King, J., concur.